CANNELLA, Judge.
Defendant, Leroyal Fields, appeals from his convictions of three counts of possession of stolen property, valued between $100 and $500, and his sentence on each count to 2 years imprisonment at hard labor to run concurrently. For the reasons which follow, we affirm the convictions, enhanced sentences and remand.
PROCEDURAL HISTORY
On September 12, 1995, defendant was charged by bill of information with 4 counts of illegal possession of stolen things valued at over $500, a violation of La. R.S. 14:69. Defendant was arraigned on October 25; 1995 and pled not guilty. On May 19, 1997, following a bench trial, the trial judge found defendant not guilty on Count 1 and guilty of the lesser offense of illegal possession of stolen things valued at between $100 and $500 on Counts 2, 3 and 4.
On June 11, 1997, defendant filed a motion for new trial which was | ^denied, following a hearing on July 2, 1997. On July 17, 1997, the trial judge imposed a sentence of 2 years imprisonment at hard *563 labor on each count, with the sentences to run concurrently.
Meanwhile, on May 22, 1997, the State fled an habitual offender bill of information against the defendant, alleging that he was a second felony offender. On July 17, 1997, following the imposition of the original sentences, defendant executed a waiver of rights form and admitted being a second felony offender. After advising defendant of his rights, the trial judge found defendant to be a second offender, vacated his original sentence in Count 3 and sentenced defendant to 2 years imprisonment at hard labor, with all sentences to run concurrently. Then, the trial court vacated the sentences in Counts 2, 3 and 4. Next, the trial court sentenced the defendant to 2 years imprisonment at hard labor each on Counts 2, 3 and 4, to be served concurrently. Defendant made an oral motion for appeal and filed a written motion on January 15,1998.
FACTS
The defendant was charged with illegal possession of 4 stolen cars belonging to Denise Starwood (Starwood), Loretta Weitsen (Weitsen), Mohammad Jabor (Ja-bor) and Assia Menne (Menne).
At trial, Menne testified that in July of 1995 she resided in the Forest Park apartments. She testified that on July 10, 1995, her mother telephoned her at work to tell her that her 1977 Cutlass was missing from her apartment complex. Menne called the police and reported the vehicle stolen. She testified that a police officer advised her to check with the complex manager to make sure that it had not been towed at their request. Menne testified that, after speaking to the manager, she did not believe that her car had been towed at the request of the | ¿apartment complex. The manager gave her the defendant’s phone number, however, because he was the person who usually towed vehicles from the apartment. Several weeks later, Menne located the defendant at his salvage yard in Bridge City. She told the defendant that she was in the market for a passenger’s side door for a 1977 Cutlass. Menne testified that the' defendant brought her to her own car and" offered to sell the door for “maybe $60.00.” Menne testified that she left the salvage yard, called the police and denied giving the defendant permission to possess her car. At trial, Menne identified the defendant as the man who attempted to sell her a door from her own car.
Weitsen testified that in May of 1995, she was using her father’s Toyota Camry. She testified that during that month she was staying, with her sister because her apartment and car had been damaged during a flood. Weitsen testified that one evening in May of 1995, the car was stolen from the front of her sister’s house. She reported the incident to the police, who subsequently notified her that the car had been found. Weitsen testified that at the time the car was stolen, it was in good condition, but when it was recovered, the car was missing tires and a door. She testified that she gave no one permission to take the car.
' Jabar testified that on December 8, 1994, his Oldsmobile 98 was stolen from the front of his business, Quick Check Food Store, in Chalmette. He testified that in August of 1995, he was notified by the police that his vehiclé had been recovered in a salvage yard. Jabar denied giving anyone permission to take his vehicle. Jabar identified the state’s exhibits 8 and 9 as photographs of his vehicle showing that the hood of the vehicle had been removed along with several other parts.
Starwood testified that in July of 1995, her 1984 Buick Regal was stolen | ¡Jrom the front of her house. She testified that she reported the theft to the police. Two weeks later, the police contacted her and informed her that her car had been found at a salvage yard. - She testified that she went to the salvage yard to retrieve her car and spoke to a man who told her that “Leroyal Fields owned that portion of the property.” Starwood stated that subse *564 quently, defendant’s daughter, Djuna Fields (Djuna), came to her home and told her that her brother, Leroy Fields, Jr. (Leroy, Jr.), not her father, had stolen the car. Starwood further testified that she also spoke to defendant in person and that he told her that his son had stolen the car, and offered to purchase another one for her. She testified that the defendant did not, however, fulfill his promise. Star-wood identified the defendant in court as the man with whom she had spoken, and identified state’s exhibits 10 through 14 as photographs of her car that depict it in a “demolished” and “stripped” condition. These photographs show that many of the car’s parts have been removed, including the passenger’s side door, the seats and the rear bumper.
Lieutenant Glenn Toca testified that he investigated Menne’s report of discovering her car at the defendant’s salvage yard. He testified that on August 14, 1995, he and several officers went to the salvage yard and discovered Menne’s car, as well as three more vehicles that had been reported stolen. These were the vehicles belonging to Starwood, Weitsen and Jabar. Lieutenant Toca testified that the defendant was not present when they arrived on the lot, but was arrested several days later pursuant to an arrest warrant. Lieutenant Toca testified that on August 18, 1995, he advised the defendant of his Miranda rights, and he and the defendant went to the salvage yard. There, the defendant showed him the boundaries of his salvage yard. Lieutenant Toca testified that the | (¡recovered vehicles were found within the boundaries pointed out by defendant. Lieutenant Toca further testified that the defendant told him that “the vehicles just showed up on his lot” and that “he would sell parts off of the vehicles.” The defendant also told Lieutenant Toca that he had towed Menne’s vehicle to his lot at the request of the apartment manager. Finally, Lieutenant Toca testified that, based upon the information he had received from the victims, the defendant was “booked” with theft in excess of $500.
The defendant presented the testimony of several witnesses. John Early (Early) testified that he had occupied a lot on the right side of the defendant’s salvage yard. He stated that the defendant had purchased an 18-wheeler flatbed truck from him and occasionally did some work for him. Early testified that people “dropped cars” in the adjoining vacant lot, that he saw defendant’s son on the adjoining vacant, but that he had not seen the defendant there.
Wilfred Olinde (Olinde) testified that was the landlord of the lot on which the defendant operated his salvage yard. Olinde testified that people occasionally abandoned cars on the vacant lot and at one time, he had even discovered a boat reported stolen in Terrebonne Parish.
Djuna told the trial court that Leroy, Jr. stole so many cars that she lost count. She also testified that Leroy, Jr. frequently brought stolen cars to her home and that he had even taken a stolen car to the salvage yard. At the time of trial, Djuna testified that Leroy, Jr. was in jail for stealing cars.
The defendant testified that at the time of trial, he was on probation for possession of stolen property. He told the trial judge that, a few days before, he was arrested in August of 1995, in Texas while on vacation. He stated that a few days before he left, he towed Menne’s vehicle to the salvage yard at the request |7of the apartment complex manager. The defendant denied having anything to do with the other three vehicles. The defendant also contended that the other three vehicles were found on the lot adjacent to his lot. On cross-examination, the defendant acknowledged pleading guilty to eight counts of possession of stolen property in 1994 and one count of possession of stolen property in 1976.
After the testimony of these witnesses, the trial judge found the defendant guilty on Counts 2, 3 and 4 of the lesser and *565 included offense of illegal possession of stolen property in excess of $100 but less than $500. As to Count 1, the trial judge found the defendant not guilty.
ANDERS APPEAL
Defense counsel has filed a brief complying with the procedure approved by the United States Supreme Court in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), discussed in State v. Benjamin, 573 So.2d 528 (La.App. 4th Cir. 1990), approved by our Supreme Court in State ex rel Hawkins v. Criminal Dist. Court, 92-3200 (La.11/30/93), 629 So.2d 421, adopted for use in this circuit in State v. Bradford, 95-929 (La.App. 5th Cir. 6/25/96), 676 So.2d 1108 and expanded by the Supreme Court in State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241. Defense counsel asserted that, after a detailed review of the record, he could not find any ruling of the trial court or non-frivolous issues to raise on appeal. He thoroughly discussed the trial court’s denial of defendant’s motion for a new trial filed on the ground of newly discovered evidence. Counsel stated that he found no error in this ruling. Counsel also discussed the sufficiency of the evidence and concluded that the evidence was sufficient to support the verdict beyond a reasonable doubt. Counsel requested a review for patent error. Further, counsel stated that he | ¿forwarded to defendant a copy of the brief which he filed with this court. He also filed a motion to withdraw.
ANDERS REVIEW
Following receipt of counsel’s brief and motion to withdraw, this court made a full examination of all the proceedings to determine whether the appeal is frivolous. Our examination of the record in the instant case consisted of (1) a review of the bill of information to ensure that defendant was properly charged, (2) a review of all minute entries to ensure that defendant was present at all crucial stages of the proceedings and that the conviction and sentence are legal (3) a review of all the pleadings in the record and (4) a review of all the transcripts to determine if any ruling provides an arguable basis for appeal. We find no non-fiivolous issues. Therefore, we grant defense counsel’s motion to withdraw.
ERRORS PATENT
We have reviewed this case for errors patent and find that the trial court erred in failing to properly advise the defendant of the prescriptive period for post conviction relief.
La.C.Cr.P. art. 930.8 provides that a defendant has 3 years after his judgment of conviction and sentence becomes final within which to apply for post conviction relief. Subpart C of the article requires that the trial court inform the defendant of the 3 year prescriptive period at the time of sentencing. The trial court in this case did not so inform defendant.
Therefore, we instruct the trial court to send appropriate written notice to defendant of the correct statement of the law regarding the prescriptive period for post conviction relief and to file written proof in the record ' that defendant | ^received the notice. See. State v. Kersha/w, 94-141 (La.App. 5th Cir. 9/14/94), 643 So.2d 1289. We find no other errors patent on the face of the record.[1]
Accordingly, for the reasons stated above, the defendant’s 3 convictions for possession of stolen things, valued between $100 and $500, and his enhanced sentences *566 on each count to 2 years imprisonment at hard labor to run concurrently are affirmed. The case is remanded to the trial court to provide proof in the record of defendant’s receipt of appropriate notice, under La.C.Cr.P. art. 930.8, of the prescriptive period for post conviction relief.
CONVICTIONS AND ENHANCED SENTENCES AFFIRMED; CASE REMANDED.
GRISBAUM, J., CONCURS IN PART AND DISSENTS IN PART.

. In dissent, concern is expressed over the "enhanced" sentences imposed on defendant following habitual offender proceedings. The majority finds no reversible error, patent on the face of the record, in the imposed sentences. The sentences were the result of a plea bargain and, thus, not reviewable on appeal by assignment or by patent error review. Furthermore, the sentences were not actually "enhanced” following the habitual offender proceeding. As per the plea agreement, the same sentences were imposed following the habitual offender proceedings as had been originally imposed. Therefore, there is no reversible error in the imposed sentences herein.